Mr. Justice Colcock
delivered the opinion of the court.
The verdict in this case must remain, It is not now to be made a question, whether a ferryman is a common carrier ; that has been adjudged in the case of Cook and Gourdin and has been recognized as the law in a subsequent case of Miles vs. James and Johnson, (Ante 157,) decided at our last sitting at Columbia. The question then was as to the delivery. If that be sufficiently established, the liability follows as a matter of course. Three of the court (my brothers, Huger, Gantt and myself) are of opinion as soon as the ferryman signifies his assent to receive the horses and carriage of a traveller, they are to be considered as delivered. If he say, drive on, or, I am ready, having fixed his fiat, he is from that moment to be considered as-in possession, and the driver is to be considered as his agent for the purpose of getting the horses and carriage into the fiat. All carriers are permitted to regulate the manner in which the goods are to be delivered, and in many instances this is alone determined by the custom of of the place. It cannot be thought too rigorious to estab-iish this rule in regard to feryymen. Jf they prefer it, and think it conduces to greater safety, they may take the horses out, and lead them in, anq lift the carriages (at least such as may be lifted) and as to others they may drive them in, or cause them to be driven in. It is said, it would be an imposition on the traveller, to subject'him to this control, but it seems necessarily incident to the great res.v *445 pousibiiity which is imposed on the ferryman as a common carrier.
It is further objected that it would be subjecting the traveller not only to great inconvenience, but also to' great risk ; for it is not to be expected that ferrymen keep persons qualified to drive carriages, and in fact that no one would be willing, even with the responsibility of the ferryman, to trust his horses and carriage in the hands of an un-experienced driver ; but all this may, and no doubt, has been said with respect to the delivery of goods to the infinite number of bailees who are in the daily habits of receiving them ; for nothing is more common than formen to think themselves wiser than their neighbours and more qualified to do any act whatever. But when the law taking into consideration the nature of the bailments and that of the articles to be delivered, has determined what shall constitute a delivery, the parties áre left free to act for themselves.
If the ferryman insists on his right to drive the horses and carriage into the flat, and the traveller does not choose to trust him, he may not cross at the ferry; but there is in fact no ground for difficulty on this point. If a flat be in proper order and the bank in good repair, (as it is the duty of the ferryman to keep them) it is more easy to drive into a flat than through a bad road, and the necessity which would induce the travellers to get an experienced driver, would ensure the ferryman a qualified agent.
But the question of delivery must be for the jury. ' In Selway vs. Holloway, (1 Lord Raymond 46,) a case of a common carrier, three verdicts were given on the question of delivery alone, depencling'on a simple fact. The inquiry therefore is whether there was sufficient evidence to induce the jury to believe that there was a delivery in this case. The testimony is that the carriage was in the flat and óu the drop. Now if the drop be considered as a part of the flat, the delivery was as complete as placing a bale of goods on the deck ox a vessel. The drop is a iiecessary part of the flat, particularly-where the bank is so *446 steep as this is at low water. Butlet.it be supposed that it wao only an appendage to the flat, a necessary instrument to effect the deliver»?', then by analogy the delivery ought to be considered as complete. It was contended that the delivery can never be complete so long as the thing is in transitu to the place or point of ultimate deposit. Bus this idea is refuted by the caces of a delivery, by placing on the deck or (according to the custom of some places,) on the wharf, for the ultimate place of desposit in the hold of the vessel; and so by the case from 4 Espinasse 261, (Thomas et al. vs. Day,) where the hook is applied to the hale of goods which' had not yet reached the warehouse. There was still something to be done in all these cases. Suppose the ferryman had undertaken to lift this carriage into the fiat, and had placed it on the gunwale to rest and from that it had slipped into the river, here it was obvious something more was to be done, yet it would not Le doubted in such case they would be liable. The question then does not depend on the fact, that the thing was not yet completely disposed of by the carrier, but upon the assent of his mind, (evidenced either by his acts or language,) to take possession. What said Lord Ellmbo-rough in the case of Thomas et al. vs. Day! The moment the hook was applied, the possession was in the warehouse-map,, although applied by the carman. As soon as the carriage was fairly on the slip or drop though driven by the servant of plaintiff, it was in the defendants possession. Et is contended, however, that so far as relates to the transportation of carriages and horses, the ferryman ought not to be liable; for the carriages and horses are only the appendages of the persons; and the carriers of persons are not liable for their appendages ; to support which it is shown that if a passenger in a stage coach loose his watch or a lady her ring or shawl, the stage coachman-, is not liable. There is as much analogy in law between the cases sis there is in art between the things ; and it is clear that a ring is net jibe a carriage, and still more clear that where 'heve is no undertaking to carry and consequently no com- *447 pecsation for carriage, there can be no responsibility fox loss. The carriers oi’ persons are not to inquire what jewels they wear, nor do they receive a greater price íor a lady'with a ring than for one without, lint in the carriage of persons, although the stage owner is not liable at all events lor an injury done to the person,yet if it be the re-, suit of negligence he is liable. (Aston vs. Heane et al. 2 Espinasse's Cases, 533. 2 Campbell 79.) And upon that ground the defendant in this case would be liable for the loss of the property. There is no doubt that the loss was the result of direct and palpable negligence ; for the: carriage would not have taken a wrong direction if the flat had been properly drawn, up; and when it did take a wrong direction.from the wheeling of the flat, it would not have fallen off, if the drop had been wider and perfectly sound. If it had been as wide as the Sat, the jolt would not have been received.
justices Huger and Richardson, concurred.